UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
KENNETH CARNESI,

                 Petitioner,                         **MEMORANDUM OF
                                                           DECISION AND ORDER**
          -against-                            11-CV-1044(ADS)

UNITED STATES OF AMERICA,

                 Respondent.
--------------------------------------------------------X

**APPEARANCES:**

**Kenneth Carnesi**
*Pro se Petitioner*
12 Hamilton Place, Apt. C4
Garden City, NY 11530

**Loretta E. Lynch**
**United States Attorney**
**Eastern District of New York**
*Attorneys for the Respondent*
610 Federal Plaza
Central Islip, NY 11722
   By: Burton T. Ryan, Jr., Assistant United States Attorney

**SPATT, District Judge:**

       The Petitioner Kenneth Carnesi ("the Petitioner") is seeking a writ of error coram nobis pursuant to the All Writs Act, 28 U.S.C. § 1651, challenging an order of restitution imposed by the Court on October 14, 2005. The Petitioner claims he is entitled to coram nobis relief because restitution was imposed in violation of the procedures set forth in the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663(a); specifically, failure to identify victims and their respective actual amounts of loss. For the reasons set forth below, the Petitioner's application for coram nobis relief is granted.

1

## I. BACKGROUND

**A. Procedural History**

The Petitioner is a former attorney and president of business consulting firms. From about October 27, 1986 to May 30, 2001, he conspired with a London counterpart to defraud European small businesses out of millions of dollars by utilizing two "advance fee" schemes. In the first scheme, the Petitioner and his co-conspirator fraudulently sold bogus United States backed securities to European business investors. In the second scheme, in exchange for fees, the Petitioner and his co-conspirator made fraudulent offers of insurance to small businesses to assist the businesses in obtaining loans from American financial institutions. The securities and insurance policies were never issued, and no business loans were ever made. The Petitioner and his co-conspirator then laundered the proceeds they received from the various mail frauds and wire frauds of the fraudulent scheme through bank accounts in Switzerland, the United Kingdom and the United States.

On April 21, 2004, pursuant to a cooperation agreement, the Petitioner pled guilty to conspiracy to commit money laundering, a Class C felony, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), B(i) and (h). On October 14, 2005, the Petitioner was sentenced in the United States District Court for the Eastern District of New York to a term of incarceration of seventy (70) months and a term of supervised release of thirty-six (36) months. In addition, an Order of Restitution was issued for $5,422,000.00. In this regard, the Petitioner was directed to pay 10% of his gross monthly income until the full amount of restitution was paid, even after his term of supervised release had been terminated. The payments were not to begin until sixty (60) days after his release from incarceration.

Prior to the October 14, 2005 sentencing, on February 25, 2005, a Presentence Investigation Report was prepared by United States Probation Officer Andrew M. Jingleleski ("Officer Jingleleski"). In relevant part, the Presentence Investigation Report stated:

> The loss stemming from the count of conviction is $7,500,000. To date, the Government has not provided the names, addresses, or individual losses associated with the victims of this offense. It is noted that there are in excess of 50 victims in the instant offense. Per guidance found in United States v. Catoggio, 326 F. 3d 323 (2d Cir. 2003), restitution should not be ordered where the victims are unidentified.
> . . . .
> As the instance offense occurred after April 24, 1996, restitution is mandatory per 18 U.S.C. § 3663A and Guideline 5E1.1. The [Petitioner] is responsible for restitution in the amount of $7,500,000; however, to date, the Government has been unable to provide the identities of the individual victims and their respective losses. Per guidance found in United States v. Catoggio, 326 F.3d 323 (2d Cir. 2003) restitution should not be ordered where the victim is not identified. Additionally, if the victim's identity is known to the Government and this information is not provided to the Probation Department within ten days of sentencing, per 18 U.S.C. § 3664(d)(5), the Court may hold an evidentiary hearing within 90 days after sentencing.

(Presentence Investigation Report, ¶¶ 12, 62.)

After filing the initial report, on April 29, 2005, Officer Jingleleski prepared an addendum to the Presentence Investigation Report, which corrected the loss amount from $7,500,000.00 to $5,442,000.00. This latter figure was agreed upon by the Petitioner and the Government and was "based upon the total amount of funds transferred to accounts to which the [Petitioner] had access." (Addendum, pg. 1.) However, the Government was still "unable to provide the identities of the individual victims and their respective losses." (Addendum, pg. 2.)

At the October 14, 2005 sentencing of the Petitioner, the Government represented that, contrary to the Presentence Investigation Report, they were able to identify victims of the Petitioner's criminal conduct and had a list of almost 70. Most of the victims lived in Mexico or

overseas in Europe. The Government represented that they had notified the victims of the sentencing, but that they could not attend because they lived outside the United States. However, they did request restitution. Thus, the Government recommended that the Court issue a restitution order with respect to the loss amount of $5,422,000.00. After sentencing, the United States Probation Department would be given the individual particulars so they could distribute any monies that were collected.

For his part, the Petitioner stated that he was satisfied with the representation that was provided to him by his attorney. The Petitioner's defense counsel voiced no opposition to the Order of Restitution issued by the Court. Further, neither the Petitioner nor his attorney appealed from the Court's Order.

On November 1, 2006, the Petitioner filed a pro se habeas petition, pursuant to 28 U.S.C. § 2255, challenging the Order of Restitution imposed by this Court. The Petitioner argued (1) ineffective assistance of counsel based on his defense counsel's failure to challenge the imposition of the Order of Restitution; failure to request an evidentiary hearing concerning the identification of alleged victims and the actual amount of loss; and failure to file a notice of appeal and (2) district court error in the imposition of the Order of Restitution in violation of the procedures set forth in the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663(a).

On November 17, 2009, the Court denied the Petitioner's § 2255 petition on the grounds that (1) such a petition, in general, cannot be used for the sole purpose of challenging orders of restitution; (2) the Order of Restitution was not so burdensome that it amounted to a restraint on the Petitioner's liberty; and (3) the Court did not have subject matter jurisdiction to determine whether the Petitioner's counsel was ineffective. See Carnesi v. United States, 06-CV-5917

(ADS), 2009 U.S. Dist. LEXIS 107205 (E.D.N.Y. Nov. 17, 2009). No appeal was taken from this decision.

**B. The Instant Action**

On March 2, 2011, while still incarcerated, the Petitioner, pro se, brought the instant action seeking a writ of error coram nobis, pursuant to the All Writs Act, 28 U.S.C. § 1651. He challenges the October 14, 2005 Order of Restitution on the grounds that the Court failed to identify the victims and the actual amount of loss as required under the MVRA. As such, he requests the Court issue an order vacating and setting aside the Order of Restitution. In the alternative, the Petitioner asserts a claim for ineffective assistance of counsel for his defense counsel's failure to file a notice of appeal and requests that the Court either (1) grant the Petitioner his right of appeal of the Order of Restitution nunc pro tunc; or (2) enter a new judgment imposing the same sentence in open Court with defense counsel present.

On July 29, 2011, this Court issued an Order to Show Cause directing the Government to show cause as to why a writ of error coram nobis should not be issued. On August 25, 2011, the Government issued its opposition to the Petitioner's writ of error coram nobis petition. In its opposition, the Government noted that

> affidavits of loss were mailed to victims identified by the government and copies submitted to the Probation Department. Though that procedure was not done until after the petitioner['s] sentence the information came years before any restitution was due. . . . [B]ecause at most only harmless error has occurred due to the government not identifying the victims within the MVRA's time frame, [the Petitioner] cannot meet the burden of demonstrating fundamental error to warrant coram nobis relief.

(Gov't Opp., pg. 4.) Further, the Government pointed out that at sentencing, the Government refuted the statement in the Presentence Investigation Report that the victims could not be identified. Indeed, in this regard, the Government represented at the sentencing hearing that

5

more than 70 victims had been identified. Also at the sentence hearing, the Government clarified that the amount of the loss was $5,442,000.00, and not $7,5000.00.00. The Petitioner's defense counsel did not contest these factual assertions by the Government. (See Tr. of 10/14/05 Sentencing, pg. 2–3, 5–6.)

On or about March 9, 2012, the Petitioner was released from incarceration. Under the terms of the October 14, 2005 Order of Restitution, his restitution payments were scheduled to begin sixty (60) days following his release.

On July 24, 2012, having reviewed the petition in accordance with both the All Writs Act and the procedures set forth in the MVRA, the Court issued an order in which it determined that it required further information before it could address the merits of the petition. As such, the Court ordered the Government, on or before July 30, 2012, to submit to the Court under seal a copy of the correspondence and any accompanying documents that the Government provided to the Probation Department identifying the victims and their respective amounts of loss in compliance with the MVRA.

In a letter dated July 27, 2012, the Government responded with an attached copy of the victims list, which was obtained from the United States Attorney's Office, Victim-Witness Coordinator Lisa Foster. According to Ms. Foster, based on a review of e-mails made in 2008, victim loss affidavits, to assist probation, were mailed to approximately 55 victims whose addresses were available. The Government then stated:

> At present, we have not found the victim correspondence and the staff person assigned left the office in 2009. The agents involved in the case, who dealt with the Probation Department in the preparation of the Pre-Sentence Investigation Report and on issues concerning the restitution, and who collected the victim list, have either retired from the government or transferred from criminal investigations.

6

(7/12/12 Gov't Letter.)

Based on this representation from the Government, the Court independently reached out to the Probation Department and the Clerk's Office, neither of whom were able to identify the victims or the amounts owed. On August 10, 2012, finding a likelihood of success on the merits, the Court issued an Order suspending the Petitioner's obligation to make further restitution payments pending the Court's final decision on his petition.

## II. DISCUSSION

### A. The Legal Standard as to a Writ of Coram Nobis

"Coram nobis is an 'extraordinary remedy' authorized under the All Writs Act, 28 U.S.C. § 1651(a), generally sought to review a criminal conviction where a motion under 28 U.S.C. § 2255 is unavailable because petitioner is no longer serving a sentence." Porcelli v. United States, 404 F.3d 157, 158 (2d Cir. 2005) (citing United States v. Morgan, 346 U.S. 502, 511, 74 S. Ct. 247, 98 L. Ed. 248 (1954)). In other words, a writ of error coram nobis is "essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." Fleming v. United States, 146 F.3d 88, 89–90 (2d Cir. 1998). In this regard, the Supreme Court has suggested that it is "difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate." Carlisle v. United States, 517 U.S. 416, 429, 116 S. Ct. 1460, 134 L. Ed. 2d 613 (1996).

When seeking an order to obtain coram nobis relief, the petitioner bears the burden of demonstrating that "1) there are circumstances compelling such an action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ."

Foont v. United States, 93 F.3d 76, 79 (2d Cir. 1996) (quoting Morgan, 346 U.S. at 511); see also United States v. Salcido, 475 F. App'x 788, 789 (2d Cir. 2012), United States v. Mandanici, 205 F.3d 519, 524 (2d Cir. 2000); Fleming, 146 F.3d at 90. However, "coram nobis is not a substitute for appeal, and relief under the writ is strictly limited to cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." Foont, 93 F.3d at 78–79 (internal citations omitted); see also Nicks v. United States, 955 F.2d 161, 167 (2d Cir. 1992).

**B. As to Whether the Petitioner Will Suffer Continuing Legal Consequences**

In this case, the Government first suggests that coram nobis is an inappropriate writ to challenge a restitution order, because an obligation to pay restitution does not satisfy the continuing legal consequences prong necessary for coram nobis relief. As such, the Court begins its analysis of the petition with a discussion of the third prong of the standard articulated above. In this regard, the Court first considers generally whether coram nobis relief is available to challenge a restitution order. The Court will then review whether the Petitioner here has demonstrated that he will suffer continuing legal consequences due to the Court's October 14, 2005 Order of Restitution.

As an initial matter, the Court recognizes that "the law in the Second Circuit is unclear as to whether a writ of error coram nobis may be available to challenge an order of restitution." United States v. Guastella, 98 CR 1325 (SAS), 2009 U.S. Dist. LEXIS 52422, at *5 (S.D.N.Y. May 26, 2009). Indeed, in Kaminski v. United States, 339 F.3d 84 (2d Cir. 2003), the Second Circuit declined to determine this issue. Instead, the Honorable Calabresi, independent of the other members of the panel, who expressed neither agreement nor disagreement with his position, opined that coram nobis may be used to challenge a non-custodial aspect of a sentence,

8

such as an order of restitution. Id. at 89–90 (opinion of Calabresi, J.). In reaching this conclusion, Judge Calabresi cited to the Seventh Circuit's decision in Barnickel v. United States, 113 F.3d 704 (7th Cir. 1997). In that case, the Seventh Circuit found coram nobis to be an appropriate vehicle to challenge an order of restitution in non-custodial cases where relief under § 2255 is unavailable. Id. at 706 (citing United States v. Mischler, 787 F.2d 240 (7th Cir.1986) (finding a writ of error coram nobis available to challenge a restitution order)).

Nonetheless, the Seventh Circuit noted that "coram nobis is itself an extraordinary remedy, which (like habeas corpus) cannot be used to reach issues that could have been raised by direct appeal and which, although not limited by the 'in custody' requirement of habeas corpus, has its own set of hurdles to surmount." Id. Likewise, Judge Calabresi in Kaminski also emphasized that

> coram nobis is an extraordinary remedy which operates under rules that are generally more stringent than those applicable to habeas. Thus, we have pointed out that coram nobis can relieve an individual of the continuing noncustodial effects of a criminal conviction only when fundamental errors were made in obtaining that conviction. See Fleming v. United States, 146 F.3d 88, 89–90 (2d Cir. 1998) (per curiam) (stating the need for the errors to be fundamental); Foont v. United States, 93 F.3d 76, 78 (2d Cir. 1996) (same). And this means that-in our tradition-collateral relief is less readily obtained from noncustodial punishments than from custodial ones, which, whether one agrees or not, is perfectly sensible.

Id. at 89–90 (opinion of Calabresi, J.).

Despite Judge Calabresi's opinion in Kaminski, the issue of whether a writ of error coram nobis may be available to challenge an order of restitution still remains unsettled in this Circuit. See Guastella, 2009 U.S. Dist. LEXIS at *5; Chanko v. United States, 96 Cr. 519 (JGK), 04 Civ. 2258 (JGK), 2005 U.S. Dist. LEXIS, at *10 (S.D.N.Y. June 8, 2005). However, this Court finds the Seventh Circuit and Judge Calebresi's opinion in Kaminski persuasive. Moreover, the Court

9

notes that other courts in in the Second Circuit have considered petitions for writs of error coram nobis, challenging orders of restitutions. See, e.g., Ewan v. United States, Case No. 11-CV-06254 (FB), 2012 U.S. Dist. LEXIS 120073 (E.D.N.Y. Aug. 23, 2012); Famiglietti v. United States, No. 09 Civ. 2527 (LTS), No. 01 CR. 19 (LTS), 2010 U.S. Dist. LEXIS 25492 (S.D.N.Y. Mar. 12, 2010); United States v. Hotte, 97 CR 669 (SJ)(RML) (E.D.N.Y. May 31, 2008), aff'd, 328 F. App'x 740 (2009). As such, the Court finds that a writ of error coram nobis may be used to challenge a court's order of restitution. See Goldman v. United States, 96-CV-344, 2000 U.S. Dist. LEXIS 15315, at *5 (N.D.N.Y Sept. 26, 2000) ("A writ of error coram nobis may be employed to challenge a restitution order.").

In addition, the Court finds that the Petitioner in this particular case will continue to suffer legal consequences that may be remedied by granting a writ of error corman nobis. In this regard, the October 14, 2005 Order of Restitution imposes on the Petitioner an obligation to pay 10% of his gross monthly income until the full amount of restitution–$5,442,000.00–is paid. As the Petitioner explains, these payments "will continue in all likelihood for the remainder of [his] life, with adverse effect upon [his] ability to make a living, own property and obtain financing or credit for future business operations." (Pet. Mem., pg. 2.) In addition, any failure by the Petitioner to make these monthly restitution payments may "constitute a violation of his release and subject the Petitioner to immediate incarceration." (Pet. Mem., pg. 2.) This is sufficient to establish that the Petitioner will continue to suffer legal consequences.

**C. As to Whether Sound Reasons Exist for the Petitioner's Failure to Seek Appropriate Earlier Relief**

Next, the Court considers whether the Petitioner has met the second prong of the coram nobis standard, requiring that the Petitioner establish that he has sound reasons for failing to seek appropriate earlier relief. In this regard, courts have found that where "[a petitioner's] claim

regarding the restitution order 'plainly could have been raised on direct appeal from the judgment of conviction,' but was not," a petition for writ of error coram nobis must be denied. United States v. Vitrano, 07 Civ. 462 (JGK), 05 Cr. 1264 (JGK), 2007 U.S. Dist. LEXIS 73055, at *2 (S.D.N.Y. Sept. 28, 2007) (quoting Chacko, 2005 U.S. Dist. LEXIS at *12).

For example, in Hotte, the petitioner, like the Petitioner in this case, sought coram nobis relief on the ground that the district court imposed the restitution without first identifying the particular victims of his fraudulent activities, as well as the specific amounts owed to those victims, in violation of the MVRA. 97 CR 669 (SJ)(RML) at 3. However, the Hotte court denied the petition and found as follows:

> Although the [petitioner] may indeed meet the first and third conditions [for coram nobis relief], he has not provided the Court with "sound reasons" for his failure to raise the current argument previously, as required by the second prong of the inquiry. Not only was the [petitioner's] MVRA argument not raised on direct appeal, it was also absent from all of his subsequent motions and appeals leading up to his motion for reconsideration of his habeas petition, which he filed in March 2005, more than six years after the restitution order was imposed by this Court. The Second Circuit has suggested that if a Defendant "knew or should have known of the facts underlying his current claim," but nevertheless failed to raise the argument in question until several years after the judgment of conviction, s/he does not meet the criteria for making a valid coram nobis claim.

Id. at 5 (citing to Foont, 93 F.3d at 80) (internal alterations omitted). The Second Circuit affirmed this decision. See Hotte, 328 F. App'x at 741.

Other courts have similarly found that the failure to either directly appeal a restitution order or take other timely action bars a petitioner from challenging that order through a petition for a writ of error coram nobis. See, e.g., Bartz v. United States, Criminal No. 1:94-CR-87, 2010 U.S. Dist. LEXIS 29878, at *6 (D. Vt. Mar. 26, 2010) (finding that the petitioner "has not met his burden for relief under a writ of coram nobis" because, in part he failed to "explain why he

11

did not challenge the restitution either on direct appeal or in a timely post-judgment motion"); United States v. Dos Santos, 979 F. Supp. 949, 951 (E.D.N.Y. 1997) ("[T]he petitioner can derive no comfort from the Writ of Error Coram Nobis. The petitioner failed to avail himself of a direct appeal from his conviction and sentence, and he cannot recapture that lost opportunity by resorting to Coram Nobis.")

At first glance, coram nobis relief appears to be inappropriate in this case on this basis. First, the Petitioner did not raise any objections to the Order of Restitution during the Sentence Hearing on October 14, 2005. The Petitioner also filed no post-judgment motions and took no appeal. Indeed, it was not until over a year later, on November 1, 2006, that the Petitioner filed a pro se petition and raised, for the first time, his objections to the October 14, 2005 Order of Restitution. However, the Court notes that this one year delay is significantly shorter than the six-year delay at issue in Hotte. 97 CR 669 (SJ)(RML) at 5; see also, e.g., Famiglietti, 2010 U.S.. Dist. LEXIS at *1, 4–5 (denying the petitioner's petition for a writ of error coram nobis where he waited five years to challenge his restitution order).

Nevertheless, the Petitioner asserts that he has sound reasons for his failure to seek earlier appropriate relief. Specifically, he claims that his counsel was ineffective, both in failing to raise objections to the Order of Restitution at the October 14, 2005 sentencing hearing and in failing to file a notice of appeal. In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052; 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for establishing ineffective assistance of counsel under the Sixth Amendment of the United States Constitution. First, "a convicted defendant who complains of the ineffectiveness of counsel's assistance . . . must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second,

12

"[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

In Roe v. Flores-Ortega, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), the Supreme Court found that the Strickland test may apply to such claims based on a counsel's failure to file a notice of appeal. Id. at 476–77. In this regard, as the Second Circuit has explained, the Flores-Ortega Court applied the Strickland test to an ineffective assistance of counsel claim based on a failure to file a notice of appeal as follows:

> First, with respect to the reasonableness of counsel's representation, the Court held: Counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. "In making this determination, courts must take into account all the information counsel knew or should have known."
> Second, with respect to prejudice, the Court held that "to show prejudice, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." The "would have appealed" standard considers all of the circumstances, including whether there were nonfrivolous issues to appeal.
> In sum, the Supreme Court concluded that "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal."

Sarroca v. United States, 250 F.3d 785, 787 (2d Cir. 2001) (quoting Flores-Ortega, 528 U.S. at 480, 484–85).

Here, the Petitioner alleges that his defense counsel should have been aware of the procedural requirements of the MVRA concerning the imposition of orders of restitution. As such, he further contends that his counsel "knew or should have known that his client would and

should appeal the District Court's imposition of an Order of Restitution in the amount of $5,422,000.00, which had no identified victims and no identified method of calculation for actual amount of loss." (Pet. Mem., pg. 11.) The Court agrees. As will be further discussed below, the deficiencies in the Order of Restitution were obvious violations of the MVRA, and therefore, a rational defendant would want to seek an appeal. As such, the Petitioner's defense-counsel violated his constitutionally-imposed duty to consult with his client about appealing the Court's October 14, 2005 Order of Restitution.

In addition, a review of the record reveals that during the criminal proceeding, the Petitioner's defense counsel never challenged the Order of Restitution for its failure to comply with the MVRA, in that findings as to the identity of the victims and the amount of loss were never made. Particularly instructive in this regard is the district court's decision in Ewan, 2012 U.S. Dist. LEXIS at *7–10. In that case, the district court, considering a petition for a writ of error coram nobis, found that a defense counsel's failure to object to a calculation of restitution that included recovery for losses caused by related, uncharged conduct "fell below a reasonable standard of representation and prejudiced [the petitioner]." Id. at *9. The district court went on to vacate the restitution order on that basis.

Accordingly, the Court finds that the Petitioner has satisfied the second prong by establishing that he had sound reasons for not seeking appropriate earlier relief.

## D.  As to Whether there are Circumstances Compelling such an Action to Achieve Justice

Finally, with respect to the first prong, the Supreme Court has emphasized that the "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through [the] extraordinary remedy [of coram nobis] only under circumstances compelling such action to achieve justice." Morgan, 346 U.S. at 511. In this

14

case, the Petitioner contends that because neither the victims nor their respective amounts of loss were identified, as required by the MVRA, the Court's October 14, 2005 Order of Restitution is procedurally defective. See 18 U.S.C. § 3663(a). The Court finds that these circumstances compel action by the Court to achieve justice.

The MVRA "appl[ies] in all sentencing proceedings for . . . plea agreements relating to charges. . . in which an identifiable victim or victims has suffered a . . . pecuniary loss." 18 U.S.C. § 3663A(c)(1) (B). Under the statute, in cases where an offense was committed by fraud or deceit, a court is required to "order . . . that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate." 18 U.S.C. § 3663A(a)(1). In this context, "victim" is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2).

Orders of restitution are issued and enforced in accordance with § 3664, which states as follows:

> For orders of restitution . . . , the court shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant. If the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court.

18 U.S.C. § 3664(a). Further, 18 U.S.C. § 3664(d)(5) "requires victims' losses [] be determined and an order of restitution entered no later than ninety days after sentencing." United States v. Zakhary, 357 F.3d 186, 191 (2d Cir. 2004).

The MVRA's "primary and overarching purpose . . . is to make victims of crimes whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." United States v. Pescatore, 637 F.3d 128, 139 (2d. Cir. 2011) (citing United States v. Simmonds, 235 F.3d 826, 831 (3d Cir. 2000)); see also Hughey v. United States, 495 U.S. 411, 416 (1990) (observing that the "meaning of 'restitution' is restoring someone to a position he occupied before a particular event"); United States v. Coriaty, 300 F.3d 244, 253 (2d Cir. 2002) (holding that "statutory focus" of the MVRA is "upon making victims whole"). Thus, of importance, "restitution can only be imposed to the extent that the victims of a crime are actually identified." United States v. Catoggio, 326 F.3d 323, 328 (2d Cir. 2003) (holding that "identification of victims is a statutory prerequisite to the application of the MVRA"). As a result, "[a] lump sum restitution order entered without any identification of victims and their actual losses is not permissible." Zakhary, 357 F.3d at 190; see also United States v. Grice, 419 F. App'x 50, 52 (2d Cir. 2011). In addition, the Second Circuit in United States v. Porter, 41 F.3d 68 (2d Cir. 1994) held that "a sentencing court cannot . . . authorize[e] a probation officer to make post-sentencing decisions as to either the amount of restitution or the scheduling of installment payments." Id. at 71 (citations omitted).

In this case, the Government has continually failed to produce evidence that would satisfy the requirements pertaining to identification of victims and accounting of their respective losses as required under the MVRA. The Presentence Investigation Report and its subsequent addendum explicitly stated that United States was unable to identify either the victims or their

16

individual amounts of loss. Although the Government later represented at the sentencing hearing that over 70 victims had been identified, it appears that a victims list was never produced at the hearing, nor was any evidence ever submitted regarding the amount of loss for each victim.

Indeed, even when the Court, in an order dated July 24, 2012, directed the Government to submit to the Court under seal documentation concerning the identity of the victims and their respective amounts of loss in compliance with the MVRA, the Government only submitted a victims list, but not each victim's actual loss. Moreover, it appears that the Court's Order of Restitution erroneously delegated to the Probation Department the authority to determine the amount of loss of each victim by ordering only a lump sum restitution. Accordingly, the Court finds that this failure to comply with the MVRA rises to the level of a fundamental error, thereby rendering the October 14, 2005 Order of Restitution void.

However, as the Second Circuit has recognized, "a district court's failure to determine identifiable victims' losses within ninety days after sentencing, as prescribed by § 3664(d)(5), will be deemed harmless error to the defendant unless he can show actual prejudice from the omission." Zakhary, 357 F.3d at 191. Here, the Petitioner has failed to demonstrate such prejudice would exist and even concedes "that his challenge is not to the 'time frame' in which the [United States] has acted; but rather it is to the fact that the [United States] has failed to comply at all." (Pet. Reply, pg. 1.)

Therefore, in light of the Court's findings that the Petitioner has established the three prongs necessary to obtain coram nobis relief, the Court vacates its October 14, 2005 Order of Restitution. However, because a failure to determine identifiable victims' losses within ninety days after sentencing is harmless error, the Court may reinstate restitution if the Government, within sixty days of the date of this Order, submits evidence to the Court identifying the victims

and the amount of each victim's loss in compliance with the MVRA. The Government will be granted no additional opportunities to produce this evidence.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Petitioner's petition for a writ of error coram nobis is GRANTED; and it is further

**ORDERED**, that the Court's October 14, 2005 Order of Restitution is vacated; and it is further

**ORDERED**, to the extent the Petitioner has previously complied with the Court's October 14, 2005 Order of Restitution, the Government is directed to return to the Petitioner any restitution payments made; and it is further

**ORDERED**, that the Court may reinstate restitution upon the submission of evidence by the Government to the Court under seal, within sixty days of the date of this Order, identifying the victims and the amount of each victim's loss in compliance with the MVRA. The Government will be granted no additional opportunities to produce this evidence.

**SO ORDERED.**

Dated: Central Islip, New York
      March 18, 2013

                                       ____/s/ Arthur D. Spatt____
                                        ARTHUR D. SPATT
                                     United States District Judge